UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

WILLIAM THOMAS CLARK and
TDA CONSTRUCTION, INC.

                      Plaintiffs,             Civil Action No.: 7:17-CV-7233-KMK

    -against-                       ECF CASE

QMG GLOBAL HOLDINGS, LLC, F/K/A
QUANTITATIVE STRATEGIES GROUP, LLC      April 5, 2018
QMG FOUNDERS I, LLC
QMG INVESTORS, L.P.,
JOHN A. BRUNJES, INDIVIDUALLY,
JOHN A. BRUNJES, AS TRUSTEE OF THE
JOHN W. BRUNJES ESTATE TRUST, and
JOSEPHINE M. BRUNJES,

                      Defendants.

-------------------------------------------------------------------X

## DEFENDANTS' MOTION TO COMPEL ARBITRATION
## AND DISMISS PROCEEDINGS, OR IN THE ALTERNATIVE,
## TO COMPEL ARBITRATION AND STAY PROCEEDINGS

     Defendants QMG Global Holdings, LLC, F/K/A Quantitative Strategies Group, LLC,

QMG Founders I, LLC, QMG Investors, L.P., John A. Brunjes, Individually,  John A. Brunjes,

as Trustee of the John W. Brunjes Estate Trust, and Josephine M. Brunjes (collectively,

"Defendants")  by and through the undersigned counsel, hereby move to compel arbitration and

to dismiss, or in the alternative, stay this proceeding.

## PRELIMINARY FACTS

     The parties entered into a series of contracts in 2013 and 2014 including (i) a Convertible

Promissory Note dated February 14, 2013; (ii) a Convertible Promissory Note dated May 6,

2013; (iii) a Term Note dated January 22, 2014; (iv) a "Side Letter" agreement dated January 22,

2014; (v) a Guaranty Agreement dated January 28, 2014; (vi) a Loan Agreement dated January

22, 2014; and (vii) a Note Purchase Agreement dated January 28, 2016 (collectively the

"Agreements"). *See* Compl. ¶10-17; *See also* Affirmation of Joseph M. Pastore dated April 5, 2018 submitted herewith (hereinafter "Pastore Aff.") at ¶3-9, Exh. A-G. Each and every one of the aforementioned Agreements contain mandatory arbitration clauses. *Id.* The attached chart entitled Exhibit 1 highlights the parties to each agreement and the relevant sections.

Plaintiffs assert two claims in their Complaint, both of which are based on the aforementioned Agreements: breach of contract and fraud in purportedly inducing Plaintiffs to enter into the Agreements. *See* Compl.[1] ¶28-32. Plaintiffs' claims, and the contracts they rely on, are governed by the arbitration clauses requiring any and all claims or disagreements to be resolved through arbitration – making Plaintiffs' action in this Court improper.

## ARGUMENT

### I.     Federal Law Requires that Arbitration Provisions Be Enforced.

The Federal Arbitration Act (the "FAA") was enacted to promote the enforcement of private agreements to arbitrate and provides that written agreements to arbitrate contained in contracts evidencing a transaction involving commerce shall be valid, irrevocable, and enforceable. 9 U.S.C.S. § 2. *See In re Currency Conversion Fee Antitrust Litig.,* 265 F. Supp. 2d 385, 400 (S.D.N.Y. 2003); *Provident Bank v. Kabas*, 141 F. Supp. 2d 310, 312, (E.D.N.Y. 2001) LEXIS 5210, *8. *See also Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24-25 (1991); *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 109 (2001). 9 U.S.C. § 3 gives courts the power

---

[1] Upon information and belief, the six agreements listed in ¶11 to 16 of the Complaint are five of the seven Agreements listed here and defined as the Agreements, with exception to the alleged "Mortgage Note" listed in ¶13 of the Complaint and with the addition of the Note Purchase Agreement dated January 28, 2016 and Loan Agreement dated January 22, 2014, omitted from Plaintiffs' Complaint (The agreements referenced in the Complaint are defined as the "Complaint Agreements"). To Defendants' knowledge at this time no Mortgage Note was executed between the parties. The Agreements are attached to the Pastore Affirmation. To the extent that Plaintiffs claim that the Agreements and the Complaint Agreements are not the same, or if they have an executed Mortgage Note, they should so allege in any opposition, and attach thereto (please note that Plaintiffs did not attached the Complaint Agreements referenced in ¶11 through 16 of the Complaint, thereby causing the confusion). Regardless of whether there is one missing document, it is abundantly clear that any dispute arising from Plaintiffs' Complaint is subject to multiple arbitration clauses under the FAA.

to stay an action upon being satisfied that the issue before the court is referable to arbitration and § 4 allows a party to petition a court to compel arbitration. *Provident Bank v. Kabas*, 141 F. Supp. 2d 310, 312 (E.D.N.Y. 2001) LEXIS 5210, *8.

The FAA, 9 U.S.C. § 1-14, establishes that, as a matter of law, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 843, (2nd Cir. 1987) LEXIS 4393, *1.

The FAA §4 provides that a "party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any Unites States District Court, which save for such agreement, would have jurisdiction … for an order directing that such arbitration proceed in the manner provided for in such agreement." *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* 473 U.S. 614, 619 n.3 (1985).

The FAA further provides that when a party filed a judicial complaint in violation of an agreement to arbitrate, a federal district court shall stay all judicial proceedings and direct the parties to proceed to arbitration. *Gilmer*, 500 U.S. at 25; 9 U.S.C. §§3 and 4; *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985). *Gilmer* reversed the district court's denial of petitioner's motion to compel arbitration of state pendent claims, despite an agreement between the parties to submit disputes to arbitration, and held that under the FAA courts are required to enforce the bargain of the parties to arbitrate. 500 U.S. at 25.

In determining whether a particular claim falls within the scope of the parties' arbitration agreement, Courts "focus on the factual allegations in the complaint rather than the legal causes of action asserted." *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 74 (2d Cir. 1998) (citing

*Genesco, Inc*., 815 F.2d at 846). "If the allegations underlying the claims 'touch matters' covered by the parties' [contracts], then those claims must be arbitrated, whatever the legal labels attached to them." *Id.*

The Supreme Court has long instructed that arbitration is strongly favored as a matter of policy and that any ambiguities in the scope of an arbitration clause should be resolved in favor of arbitration. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983); *In re Currency Conversion Fee Antitrust Litig.,* 265 F. Supp. 2d 385, 400 (S.D.N.Y. 2003); *Oldroyd v. Elmira Sav. Bank, FSB,* 134 F.3d 72, 76 (2d Cir. 1998). Thus, a court must compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Amer.,* 475 U.S. 643, 650 (1986).

The FAA, under 9 U.S.C. §3, directs a district court to enter a "stay of proceedings" in a case where the asserted claims are "referable to arbitration." *Reynolds v. de Silva*, 2010 U.S. Dist. LEXIS 18040, *1, 2010 WL 743510. However, "where all of the issues raised in the complaint must be submitted to arbitration, the court may dismiss an action rather than stay proceedings." *Id* at *23 (*citing Spencer-Franklin v. Citigroup/Citibank N.A*., No. 06 Civ. 3475, 2007 U.S. Dist. LEXIS 11625, 2007 WL 521295, at *4, 11 (S.D.N.Y. Feb. 21, 2007)).

## II.     The Arbitration Clauses are Both Applicable and Enforceable.

The Complaint alleges that the first cause of action for breach of contract is based upon paragraphs 11 to 16 of the Complaint, referencing the Complaint Agreements. Compl. at ¶29.

Each of those Complaint Agreements[2] contain arbitration clauses and the arbitration provisions and language in each of the Complaint Agreements and Agreements at issue could not be clearer – Plaintiffs have contractually agreed to resolve all disputes through arbitration.

By example, the Convertible Promissory Note dated February 14, 2013 (Compl. at ¶11) states, as does most of the agreements, that the arbitration of disputes will be in accordance with the rules of American Arbitration Association and will take place in Stamford, Connecticut. *See* Pastore Aff. at ¶3, Exh. A, section 7.8, "If any controversy or dispute arises under, out of or in relation to any of the provisions hereof which cannot be settled by the Parties within fifteen (15) days after the same shall arise, such controversy or dispute shall be submitted for arbitration in Stamford, Connecticut before a single arbitrator chosen in accordance with the rules of the American Arbitration Association."

Also by example, the Convertible Promissory Note dated May 6, 2013 (Compl. at ¶11) states in relevant part, under section 7.7, in all capital letters:

> "THE PARTIES HERETO HAVE AGREED TO SUBMIT ALL CLAIMS AND DISPUTES ARISING UNDER THIS NOTE TO BINDING ARBITRATION AS PROVIDED BELOW, EACH PARTY ACKNOWLEDGES AND AGREES THAT IT IS HEREBY VOLUNTARILY WAIVING ITS RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER PARTY AGAINST THE OTHER ON ANY MATTER WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS NOTE."

*See* Pastore Aff. at ¶4, Exh. B.

The Term Note dated January 22, 2014 (Compl. at ¶14) states, "The Parties agree that any Disputes between them arising from or in connection with this Note, directly or indirectly,

---

[2] With the exception of the Mortgage Note - to Defendants' knowledge no Mortgage Note was executed by the Parties to this action.

shall be resolved exclusively in accordance with the mandatory arbitration provisions of Section 10 of the Loan Agreement." *See* Pastore Aff. at ¶5, Exh. C, p4 section 5(b).

The "Side Letter" dated January 22, 2014 (Compl. at ¶15) states "The  Parties agree that any Disputes between them arising from or in connection with this Side Letter, directly or indirectly, shall be resolved exclusively in accordance with the mandatory arbitration provisions of Section 10 of the Founders Loan Agreement." *See* Pastore Aff. at ¶6, Exh. D, Section 5.

The Guaranty Agreement between the parties dated January 28, 2014 (Compl. at ¶16) includes the following language under section 7. Arbitration of Disputes:

> "The Parties irrevocably and unconditionally agree that any disagreements, conflicts, claims, or disputes between the Parties of any nature whatsoever and regardless of the type of relief sought arising from or relating to this Guaranty (or the interpretation and enforcement thereof) that cannot be resolved by the Parties amicably and informally through their own good faith efforts (a "Dispute") shall not be adjudicated by th courts but instead shall be submitted to, heard, and resolved exclusively through private arbitration in accordance with this Section 7 (an "Arbitration").

> *See* Pastore Aff. at ¶7, Exh. E.

The Loan agreement between the parties dated January 22, 2014 includes a two page "10. Arbitration of Disputes" section which includes in relevant part:

> (a) The Parties irrevocably and unconditionally agree that any disagreements, conflicts, claims, or disputes between the Parties of any nature whatsoever and regardless of the type of relief sought arising from or relating to any of the Transaction Documents (or the interpretation and enforcement thereof) that cannot be resolved by the Parties amicably and informally through their own good faith efforts (a "Dispute") shall not be adjudicated by the courts but instead shall be submitted to, heard and resolved exclusively through private arbitration in accordance with this Section 10 (an "Arbitration").

> *See* Pastore Aff. at ¶8, Exh. F.

The Loan Agreement further states, in bold and in all capital letters:

> BY AGREEING TO SUBMIT ALL DISPUTES TO ARBITRATION, THE PARTIES ARE HEREBY WAIVING THEIR RIGHTS TO A TRIAL BY JURY

ON SUCH CLAIMS AND TO INSTEAD HAVE SUCH DISPUTS HEARD
AND RESOLVED SOLELY AND EXCLUSIVELY IN ACCORDANCE WITH
THE TERMS OF THIS SECTION 10.

*Id.*

The Note Purchase Agreement between the parties dated January 28, 2014, similarly

includes a more than two page section entitled "9.10 Arbitration of Disputes" which states in

relevant part:

> The Parties irrevocably and unconditionally agree that any disagreements, conflicts,
> claims, or disputes between the Parties of any nature whatsoever and regardless of the
> type of relief sought arising from or relating to this Agreement (or the interpretation and
> enforcement thereof) that cannot be resolved by the Parties amicably and informally
> through their own good faith efforts (a "Dispute") shall not be adjudicated by the courts
> but instead shall be submitted to, heard and resolved exclusively through private
> arbitration in accordance with this Section 9.10 (an "Arbitration").

> *See* Pastore Aff. at ¶9, Exh. G.

The Note Purchase Agreement also includes the language:

> BY AGREEING TO SUBMIT ALL DISPUTES TO ARBITRATION, THE
> PARTIES ARE HEREBY WAIVING THEIR RIGHTS TO A TRIAL BY JURY
> ON SUCH CLAIMS AND TO INSTEAD HAVE SUCH DISPUTS HEARD
> AND RESOLVED SOLELY AND EXCLUSIVELY IN ACCORDANCE WITH
> THE TERMS OF THIS SECTION 9.10.

*Id.*

Accordingly, the Complaint Agreements require arbitration of the causes of action in the

Complaint as both causes of action touch matters related to the Agreements and the Complaint

Agreements. Courts uniformly reject Plaintiffs' transparent tactical strategy of attempting to

evade an arbitration agreement and make their Complaint public, in direct breach of the

agreements. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25

(1983). *See also In re Currency Conversion Fee Antitrust Litig.,* 265 F. Supp. 2d 385, 400

(S.D.N.Y. 2003); *Disc. Trophy & Co. v. Plastic Dress-Up Co.,* LEXIS 2659, *1, (D. Conn. 2004,

No. 3:03cv2167); *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 74 (2d Cir. 1998). There is no

legal basis upon which Plaintiffs can rightfully assert that they were entitled to sue Defendants in

court – all applicable law requires that the Complaint be compelled to arbitration.

### III.     Despite there being some vague New York Court language in some agreements, it is evident that there was a meeting of the minds that arbitration should govern – since there are extensive arbitration clauses in each and every one of the Agreements.

While the Term Note and Side Letter include language that references the courts of New

York having jurisdiction, that language only provides that New York Courts have jurisdiction to

enforce the obligations under the note. In other words, should a party need to compel the other

party to arbitration, or confirm an arbitration award, New York Courts would have jurisdiction.

While the language is admittedly vague, it is ultimately clear that the parties expressly agreed to

arbitrate all disputes, considering there are extensive - some multiple pages long, in all capital

letters and/or bolded – arbitration clauses, waiving the Parties' right to a trial by jury, in each and

every single one of the Agreements at issue in this case. Any language regarding the governing

law being either New York or Connecticut does not change this fact.

Importantly, the Term Note and Side Letter both specifically state "The Parties agree that

any Disputes between them arising from or in connection with this [Note or Side Letter], directly

or indirectly, shall be resolved exclusively in accordance with the mandatory arbitration

provisions of Section 10 of the Loan Agreement" – further clearly indicating the intent of the

Parties to resolve any disputes in arbitration.

Even if there were truly conflicting clauses, the weight of scholarly and judicial authority

supports the view that in the case of a true conflict between jurisdiction clauses and arbitration

clauses in a contract or related contracts, arbitration should prevail over litigation. *See United

Steel Workers of Am. v. Warrier & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960) (Douglas, J.)

holding "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." In 1983 the U.S. Supreme Court, in the landmark decision *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (Brennan, J.), famously declared that "[t]he [Federal] Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved **in favor of arbitration**, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." (emphasis added).

The presumption has two related components - first, when courts construe the scope provision of an arbitration agreement to determine what merits-related issues the parties agreed to arbitrate, the court resolves ambiguities in favor of arbitration. *See, e.g., Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995). Second, it presumes that procedural issues arising out of arbitrable disputes, and contract-related defenses to arbitrability—that is, "allegation[s] of waiver, delay and like defenses to arbitrability[,]" are presumptively for the arbitrator. *See Moses Cone*, 460 U.S. at 24-25; *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002).

<u>**CONCLUSION**</u>

**WHEREFORE,** for the foregoing reasons Defendants respectfully request that the Court:

1.  Compel Plaintiffs to arbitrate their claims against them and dismiss their claims.

2.  In the alternative, Defendants request that the Court compel Plaintiffs to arbitrate their claims against Defendants and stay this Court Action pending such arbitration.

3. Defendants further request that the Court order Plaintiffs or their attorneys to pay Defendants for their reasonable attorneys' fees incurred in preparing this motion, in an amount to be determined by the Court.

Dated: April 5, 2018

**DEFENDANTS,**

**QMG GLOBAL HOLDINGS, LLC, F/K/A QUANTITATIVE STRATEGIES GROUP, LLC QMG FOUNDERS I, LLC QMG INVESTORS, L.P., JOHN A. BRUNJES, INDIVIDUALLY, JOHN A. BRUNJES, AS TRUSTEE OF THE JOHN W. BRUNJES ESTATE TRUST, and JOSEPHINE M. BRUNJES**

By _____/s/_____

Joseph M. Pastore III, Esq. (JP1717)
Pastore & Dailey LLC
708 Third Avenue 6th Floor
New York, NY 10017
Tel:  (646) 665-2202
Fax:  (646) 661-4322
Email:    JPastore@psdlaw.net

*Their counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 5, 2018, the foregoing was served by electronic delivery

pursuant to consent upon all counsel of record as follow:

Peter N. Freiberg
2 Westchester Park Drive, Suite 410
White Plains, NY 10604
*pfreiberg@denleacarton.com*

By      /s/
Joseph M. Pastore III Esq.